IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICPI COMMUNICATIONS LLC,

        Plaintiff;

v.

JPS INTEROPERABILITY SOLUTIONS, INC.,

        Defendant.

Civil Action No. 18-1507-RGA

## MEMORANDUM OPINION

Timothy Devlin, DEVLIN LAW FIRM LLC, Wilmington, DE; Eugenio J. Torres-Oyola and Jean G. Vidal Font, FERRAIUOLI LLC, San Juan, PR, attorneys for Plaintiff.

Jeremy D. Anderson, FISH & RICHARDSON P.C., Wilmington, DE; Neil J. McNabnay, Ricardo J. Bonilla, and Theresa M. Dawson, FISH & RICHARDSON P.C., Dallas, TX, attorneys for Defendant.

March 18, 2019


**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 10). The parties have fully briefed the issues. (D.I. 11, 15, 18, 23). Oral argument is unnecessary. After full consideration of the briefing, Defendant's motion is DENIED.

## I. BACKGROUND

On September 27, 2018, Plaintiff RICPI Communications LLC filed suit against Defendant JPS Interoperability Solutions, Inc. alleging infringement of at least claim 1 of U.S Patent No. 7,333,806 ("the '806 patent"). (D.I. 1). Defendant has filed a motion to dismiss the infringement claims as invalid under 35 U.S.C. § 101. (D.I. 10). The '806 patent concerns a radio over internet protocol ("RoIP"). ('806 patent abstract).

Claim 1 of the '806 patent is representative and reads as follows:

1. A system for two-way radio communication comprising:
   (a) a first two-way radio comprising:
      (i) a means for selecting and transmitting a signal code to a shared, public base/repeater station; and
      (ii) a means for sending two-way radio communication signals to said shared, public base/repeater station;
      (iii) a means for receiving two-way radio communication signals from said shared, public base/repeater station;
   (b) said shared, public base/repeater station comprising:
      (i) a base/repeater station decoder at said shared, public base/repeater station for decoding the signal code from said first two-way radio into a signal that is recognized by a base/repeater station controller located at said shared, public base/repeater station and transferring said signal to said base/repeater station controller via a dedicated connection; and
      (ii) wherein said base/repeater station controller comprises a means for receiving said decoded signal from said base/repeater station decoder and correlating said decoded signal to one or more internet addresses associated with at least one target base station by which there is established a bi-directional computer network link with said at least one target base station using said internet address for the exchange of two-way radio communication signals;

1

> (iii) wherein said shared, public base/repeater station further comprises a means for sending and receiving two-way radio communication signals to and from said two-way radio; and
> (c) wherein said at least one said target base station comprises:
>   (i) a target station controller located at said target base station comprising a means for establishing a bi-directional computer network link with said shared, public base/repeater station for two-way radio communication signals;
>   (ii) wherein said at least one target base station further comprises a means for sending and receiving two-way radio communication signals to and from a second two-way radio; and
> (d) at least one second two-way radio comprising:
>   (i) a means for receiving two-way radio communication signals from said at least one target base station; and
>   (ii) a means for sending two-way radio communication signals to said at least one target base station; and
> (e) whereby two-way radio communication signals are bi-directionally exchanged directly between said first two-way radio and said second two-way radio via said bi-directional computer network link directly between said shared, public base/repeater station controller and said target station controller.

('806 patent, cl. 1). The parties appear to agree that claim construction is not needed to decide this motion. (D.I. 11 at 7; D.I. 15 (no suggestion that claim construction needed)).

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The Federal Circuit follows regional circuit law for motions to

2

dismiss. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Patentable Subject Matter under 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS*

3

*Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 71 (emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 221 (alterations in original) (quoting *Mayo*, 566 U.S. at 77). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 573 U.S. at 222-23 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere

4

recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

Patent eligibility under § 101 is a question of law suitable for resolution on a motion to dismiss. *See OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Content Extraction*, 776 F.3d at 1346. At *Alice* Step Two, however, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018). Therefore, plausible factual allegations in the complaint may create a dispute of fact as to whether an inventive concept exists under *Alice* Step Two.[1]

## III. DISCUSSION

### A. Abstract Idea

"First, we determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 573 U.S. at 217. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized,

---

[1] In denying rehearing en banc, Judge Moore states, "*Berkheimer* and *Aatrix* stand for the unremarkable proposition that whether a claim element or combination of claim elements would have been well-understood, routine and conventional to a skilled artisan in the relevant field at a particular point in time is a question of fact." *Berkheimer v. HP, Inc.*, 890 F.3d 1369, 1370 (Fed. Cir. 2018) (denial of rehearing en banc).

however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 573 U.S. at 220, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "[S]ome improvements in computer-related technology when appropriately claimed are undoubtedly not abstract." *Id.* at 1335. "[I]n determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 573 U.S. at 217).

Defendant asserts that the claims of the '806 patent are directed to the abstract idea of "establishing a two-way connection over a network to send and receive data." (D.I. 11 at 6). Plaintiff argues that the claims are not directed to an abstract idea. (D.I. 15 at 1). Plaintiff contends that "the '806 patent provides a specific structure for a system that allows two-way communication between devices in a manner that did not exist at the time of the invention and is directed to improvements in computer-related technology . . . namely, enabling two-way radio communications over a computer network and/or the Internet." (*Id.*).

I agree with Plaintiff that the claims of the '806 patent are not directed to an abstract idea. The claims are clearly not directed to a mathematical algorithm. Neither are the claims directed to a method of organizing human activity or a fundamental economic practice. I understand the claims to be directed to two-way radio communications utilizing either a computer network or the Internet where the prior art used telephone lines. (D.I. 18 at 1-2; '806 patent at 1:35-47,

6

2:41-49). This is not a case where the patent claims an abstract idea applied by a generic computer system. Instead, the computer network or internet connection serves as one claim element of a concrete system for two-way radio communication. ('806 patent, cl. 1).

Defendant argues that because the patent claims use functional claim language that the patent is directed to the end result of communication over the internet or a computer network. (D.I. 11 at 14-15). Defendant further contends that the patent here is comparable to the patent at issue in *BuySafe, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) where the claims merely recited a conventional computer network. (D.I. 11 at 12). However, *BuySafe* does not control here. The claims in *BuySafe* were directed to the performance of a transaction guaranty for a contractual relationship through a conventional computer network. 765 F.3d at 1355. Moreover, the claims neither "require[d] specific programming" nor were they "tied to any particular machine." *Id.* at 1352. Here, the claims are tied to particular machines: a first two way radio, a shared, public base/repeater station, at least one target base station, and a second two-way radio. ('806 patent, cl. 1). While these machines are further defined by means-plus-function claim language, the specification discloses specific structures that could be used. (*Id.* at col. 3:3-4, 3:9-10, 3:17-21, 3:28-36, 3:44-46, 3:61-62, 4:8-9, 4:12-16, 4:22-23, 4:27-28).

Finally, Defendant raises concerns that the '806 patent "risks preempting all methods or systems for establishing a two-way communication over the Internet in order to send and receive data." (D.I. 11 at 13). I disagree. While confining claims to a particular technical environment will not save claims from being directed to an abstract idea, *Alice*, 573 U.S. at 223, the claims here are clearly limited to a system and method of two-way radio communication which uses computer networks as a single element of the system or method. Defendant points to *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 829 (E.D. Tex. 2014) as an

7

example where preemption concerns controlled. In *Loyalty Conversion*, the claims merely claimed the abstract idea of the conversion of loyalty rewards points on a generic computerized system. *See id.* at 840-41. There, the "claims would read on virtually any computerized method of performing that function." *Id.* at 843. The '806 patent is not so broad. It is limited to a specific arrangement of structures in both the systems and method claims. It does not preempt "all methods for establishing two-way communication over the internet to send and receive data."

For the foregoing reasons, I conclude that the '806 patent is not directed to an abstract idea.

## B. Inventive Concept

Alternatively, I will also address step two of the *Alice* analysis. Even if the '806 patent were directed to an abstract idea, that "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). The Court must "determine whether the claims do significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two steps of the *Alice* inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp.*, 830 F.3d at 1353. Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

Defendant argues that the '806 patent has no inventive concept because it simply adds conventional computer components to a well-known process. (D.I. 11 at 15). I disagree. The inventive concept inquiry requires an analysis of both the individual claim elements and the "ordered combination" of those elements. While the specification clearly concedes that the individual claim elements are themselves conventional, the arrangement of the claim elements is not. Specifically, the "particular arrangement of elements recited in the '806 patent improves the manner in which two-way radios may establish communication by allowing them to do so over a computer network." (D.I. 15 at 13). The use of a computer network instead of telephone lines for two-way radio communications both enables long distance communication and makes that communication more accessible because it reduces the cost of the communication. ('806 patent at col. 2:41-49). The particular arrangement claimed "effect[s] an improvement in . . . [the] technical field" of radio communication. *Alice*, 573 U.S. at 225; ('806 patent at col. 1:44-46; 2:41-49; 4:4-56).

Therefore, I determine that even if the '806 patent is directed to an abstract idea, the ordered combination of elements imparts an inventive concept such that the patent is not invalid under 35 U.S.C. § 101.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss is DENIED. An accompanying order will be entered.